**John PLAIR, Plaintiff,**

v.

**E.J. BRACH & SONS, INC. and E.J. Brach Corporation, Defendants.**

**No. 94 C 244.**

United States District Court,
N.D. Illinois,
Eastern Division.

April 20, 1995.

Sharon Finegan Patterson, Raleigh & Cahill, P.C., Chicago, Illinois, for Plaintiff.

Gregory J. Malovance, Adam S. Kosh, Winston & Strawn, Chicago, Illinois, Joel T. Pelz, Kenneth R. Dolin, Catherine P. Wassberg, Joel Africk, Stephen L. Wood, Jenner & Block, Chicago, Illinois, for Defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

John Plair sues E.J. Brach & Sons, Inc. and E.J. Brach Corporation (collectively "Brach") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plair contends that Brach fired him because he is African American. Brach moves for summary judgment pursuant to Fed.R.Civ.P. 56.

### BACKGROUND

Brach is a candy manufacturer. Def. Rule 12(M) stmt., ¶ 1; Pl. Rule 12(N) resp., ¶ 1. Brach's main plant is located at 4656 W. Kinzie Street in Chicago, Illinois. *Id.* John Plair is an African–American male. *Id.,* ¶ 2. In August 1973, Plair began working for Brach as a porter. Deposition of John Plair ("Plair Dep.") at 10–11. At all relevant times, Plair worked as a mogul truck operator in the area of Brach's Chicago plant where chocolate-covered cherries are processed. Plair Dep. at 49–50. Plair's supervi-sor in the cherry processing area was Joseph Jackson. *Id.* at 54.

While working at Brach, Plair joined Local 738 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Plair Dep. at 14. As a union member, Plair was subject to work rules promulgated by Brach. Affidavit of Bernard R. Schroeder ("Schroeder Aff."), ¶ 6; Schroeder Aff., Ex. 2 at 5. The work rules identified eighteen rule violations that might be cause for disciplinary action, including discharge. Schroeder Aff., Ex. 3 at 21. The rules forbade, in part:

1) Punching another employee's time card, permitting another employee to punch out one's time card, altering or writing on time cards, or failing to punch one's time card in and out. *Id.* at 23.

2) Falsification of employment, production, or time records. *Id.*

3) Walking off the job and/or leaving the work area or the plant during one's scheduled working time without authorization from management. *Id.*

Plair was aware that he was required to punch out his time card at the end of his shift, that he was not allowed to have another employee punch out his time card, and that he was not allowed to leave his work area or the plant during his shift without management authorization. Plair Dep. at 25–26, 28–29.

On October 26, 1992, Plair punched in his time card at approximately 2:00 p.m. Rule 12(M) stmt., ¶ 29; Rule 12(N) Resp., ¶ 29. Plair's work shift was scheduled to end at 12:30 a.m. on October 27, 1992. Plair Dep. at 76. Plair states that at some time during the evening of October 26–27, he and Arco Jefferson, a co-worker, saw a bright light shining into the cherry processing area and went over to the seventh floor windows to look at the light. *Id.* at 225–228. The light appeared to be coming from two trains on railroad tracks near the plant. *Id.* at 227. Plair claims Jefferson later told him that a gold chain Jefferson was wearing had broken and fallen off while the two were looking out the window. *Id.* at 433–35.

At some time prior to the scheduled end of his shift, Plair left the cherry processing area. Plair Dep. at 259–60; Deposition of Joseph Jackson ("Jackson Dep.") at 170. Plair states that he had completed his production quota for the evening and that he had cleaned up his area. Plair Dep. at 248. While changing out of his work clothes in an employee locker room, Plair met Jefferson. *Id.* at 245–46. Jefferson asked Plair to help him search for the chain Jefferson had lost earlier in the evening; Plair agreed. *Id.* at 241–42, 245–46. After Plair and Jefferson changed clothes, they left the plant. *Id.* at 267. Plair did not inform Jackson that he was leaving the plant and did not punch out his time card before leaving. *Id.* at 248, 265.

After Plair and Jefferson left the Brach plant, they drove in Jefferson's truck to a location behind the plant's east side. Plair Dep. at 276. As Plair and Jefferson drove alongside railroad tracks on the south end of the Brach plant, they were stopped by two Chicago police officers. *Id.* at 271–72. Plair told the police that he was going to pick up some rocks for his gutter; Plair did not mention Jefferson's gold chain. *Id.* at 278–79. The police officers told Plair and Jefferson that they were on private railroad property and that they could not drive on the property. *Id.* at 278. After the police departed, Jefferson and Plair drove to a 7–Up bottling plant and parked the truck. *Id.* at 302. Plair and Jefferson then returned to the area behind the Brach plant on foot. *Id.* After looking for the chain for approximately ten minutes, Plair and Jefferson walked back towards the 7–Up plant where the truck was parked. *Id.* at 303–304. On the way back, they were stopped by a 7–Up security guard. *Id.* at 307.

At about 1:00 p.m. on October 27, 1992, Plair and Jefferson reported to work at Brach. Plair Dep. at 313. Plair and Jefferson were told by Frank Viero, a Brach security officer, that they would not be allowed to work that day. *Id.* at 313–314. After a meeting between Plair, Jefferson, Viero, and Autry Morrison, the first shift line manager in cherry processing, Morrison told Plair and Jefferson that they were suspended. *Id.* at 315–316.

On October 27, 1992, John Klepper, Brach's Industrial Relations Manager, was notified that two employees had left the Brach plant early, without the permission of their supervisor, and later were found in back of the plant. Deposition of John Klepper ("Klepper Dep.") at 859. Klepper subsequently conducted an investigation into the circumstances surrounding Plair's alleged misconduct. Rule 12(M) stmt., ¶ 59; Rule 12(N) resp., ¶ 59. Klepper reviewed a time card bearing Plair's name; the card was punched out at 1:48 a.m. on October 27, 1994. Klepper Dep. at 798, 1154–58; Schroeder Aff., Ex. G. Klepper also reviewed a checker sheet from the night of October 26–27, 1992; the checker sheet reported that Plair had worked until the end of his shift at 12:30 a.m. Klepper Dep. at 1164, 1166. Frank Viero confirmed that the 7–Up security guards had stopped Plair and Jefferson behind the Brach plant. Klepper Dep. at 1216–17. Klepper asked Jefferson to provide proof of purchase of the gold chain; Jefferson did not provide the requested proof. Klepper Dep. at 1043–44.

On October 30, 1992, Klepper met with Plair and a union representative. Rule 12(M) stmt., ¶ 63.15; Rule 12(N) resp., ¶ 63.15. During the meeting, Plair told Klepper that he had left his shift early to help Jefferson look for a gold chain, that he had not punched out, and that he and Jefferson had been stopped behind the Brach plant. Def.Ex. H. Plair also confirmed he told the police he was going to look for rocks to put in his gutter. *Id.*

Klepper decided to terminate Plair. Klepper Dep. at 827. Klepper states that in reaching this decision, he considered that: (1) Plair left the work area before the end of his shift without permission; (2) Plair did not punch out when he left his work area and the plant; (3) Plair's time card showed a later punch out time; (4) someone recorded on the checker sheet that Plair had worked a complete shift; (5) Plair was stopped in an area behind the plant late at night; and (6) Plair and Jefferson gave inconsistent reasons for being behind the plant. Klepper Dep. at 872–873, 875, 877–78, 1043–44, 1341–42.

On November 3, 1992, Klepper sent Plair a termination letter. Def. Ex. S; Pl.Ex. F. The termination letter stated that "[b]ased on the investigation of the circumstances surrounding the events of October 27" Brach was terminating Plair's employment. *Id.* The letter gave two reasons for terminating Plair: (1) "[f]alsification of employment, production or time records, intentionally altering required medical documentation, or submitting false claims for insurance benefits"; and (2) "[w]alking off the job and/or leaving the work area or the plant during one's scheduled working time without authorization from management." *Id.* An employee termination form initialed by Klepper listed codes for falsifying records and leaving the work area as "the most appropriate" reasons for Plair's termination. Pl.Ex. G.

Plair disputes the reasons for his termination. Plair contends that his early departure provided no basis for firing him. Plair states that he was going through a divorce and as a result was very upset on the night of October 26–27. Plair Dep. at 72–76. Plair further contends that he looked for Jackson to tell him he wanted to go home early, but that he was unable to find him. *Id.* at 255–57. Jackson testified that if he had been alerted to Plair's situation, he would have let Plair leave work early. Jackson Dep. at 190–191. Plair also states that prior to his departure from the plant, production of candy had ended and he was informed that he had met his production requirement for the evening. Plair Dep. at 252. Jackson testified that once an employee finishes his duties at the plant and punches out, he is normally permitted to leave. Jackson Dep. at 138. Finally, Plair notes that Jefferson was a relief supervisor. *Id.* at 112. A relief supervisor is capable of acting as a supervisor if the regular supervisor is ill or on vacation; supervisors can authorize an employee to leave early. Deposition of Bernard R. Schroeder ("Schroeder Dep.") at 182–83.

Plair also suggests that his failure to punch out played no role in his dismissal. Plair notes that a negligent failure to punch out did not always warrant dismissal and that an employee is normally discharged for allowing someone else to punch out his time card only after a determination that the employee knew someone else would punch his card. Schroeder Dep. at 124–25, 240. Plair attests he does not know who, if anyone, punched his card out after he left and that he never saw the time recorded on the checker sheet. Plair Aff. ¶¶ 2–3. Indeed, Plair notes that the checker sheet was not his responsibility, but Arco Jefferson's. Jackson Dep. at 215; Deposition of Autry Morrison ("Morrison Dep.") at 186. Plair also cites Klepper's testimony that he did not have any evidence indicating that Plair knew someone else would punch out his time card and that Joe Kingsley, a personnel representative, could not explain how Plair's time card was punched out. Klepper Dep. at 1141, 1186. Finally, Plair notes that while his termination letter and Brach's termination report mentioned falsification of time card records, they did not specifically mention having another employee punch his time card. Def.Ex. S; Pl.Exs. F, G. Plair notes that two other employees whom Klepper terminated for permitting others to punch their time cards were told so specifically. Pl.Exs. I, J.

Plair also attempts to demonstrate that African–American Brach employees were generally less favorably treated. Plair proffers disciplinary records of over 130 past and present Brach employees whom he alleges engaged in behavior comparable to his without being terminated. Pl.Ex. O. Plair produces a statistical analysis purporting to show that African American employees were terminated by Brach for disciplinary reasons more frequently than non-African American employees. Pl.Ex. T. Plair suggests that John Klepper, who made the decision to terminate him, is particularly unfair to African Americans. Plair produces affidavits from two African American Brach employees who attest that Klepper ignored their complaints of racial discrimination by other Brach employees. Affidavit of Simon Francis ("Francis Aff"), ¶¶ 11–12; Affidavit of Jake Wright ("Wright Aff."), ¶¶ 4–5. Garland Williams, an African American employed as a Brach security guard, attests that Klepper refused to void a warning notice issued to Williams even after Williams proved that he had not deserved the notice and that Klepper later terminated him for theft of company proper-

ty, a charge Williams disputed. Affidavit of Garland Williams ("Williams Aff.") ¶¶ 10–12, 17–19. Plair also produces a chart of Klepper's employment decisions that purportedly demonstrates that African Americans disciplined by Klepper have a greater chance of being discharged than non-African Americans. Pl.Ex. W.

### DISCUSSION

### I. Summary Judgment

■ The court will grant summary judgment when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Unterreiner v. Volkswagen of America, 8 F.3d 1206, 1209 (7th Cir.1993). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir.1993), cert. denied, 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994).

■ In considering a motion for summary judgment, the court views all evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513–14; Unterreiner, 8 F.3d at 1209. However, once the moving party meets its burden of production, the nonmoving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. See Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Stewart, 5 F.3d at 1033.

### II. Title VII

■ Under Title VII, it is unlawful for an employer "to discharge any individual ... because of such individual's race, color, reli-

gion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Plair may prove his race discrimination claim in one of two ways. First, Plair may present direct evidence that he was discharged for discriminatory reasons. See, e.g., Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Alternatively, Plair may rely on indirect evidence of discrimination, employing the burden-shifting framework recognized by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### A. Direct Evidence

■ Plair cites a statistical analysis of Brach's firing practices and the testimony of Francis, Wright, and Williams that Klepper discriminated against other Brach employees as "direct evidence" that Plair was fired because of his race. Direct evidence of discrimination must prove discrimination without reliance upon inference or presumption and must relate to the specific employment decision at issue. Chambers v. American Trans Air, Inc., 17 F.3d 998, 1004 (7th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994); Randle v. LaSalle Telecommunications, Inc., 876 F.2d 563, 569 (7th Cir.1989). The evidence Plair cites pertains to Brach and Klepper's general practices, not to the particular circumstances of Plair's termination. Accordingly, the evidence Plair cites is properly considered under the McDonnell Douglas framework.[1]

### B. Indirect Evidence

■ To prove a Title VII violation under the McDonnell Douglas framework, Plair must first show: (1) that he is a member of a protected class; (2) that his work performance satisfied Brach's reasonable expectations; (3) that he was fired; and (4) that Brach sought a replacement for him. See, e.g., Yarbrough v. Tower Oldsmobile, Inc., 789 F.2d 508, 511 (7th Cir.1986). If Plair makes a sufficient showing of these four ele-

---

1. Plair cites Perfetti v. First National Bank, 950 F.2d 449, 450 (7th Cir.1991), cert. denied, 505 U.S. 1205, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992), in support of his assertion that a statistical imbalance in the employer's work-force may constitute circumstantial "direct" evidence of discrimination. However, Perfetti itself employed the McDonnell Douglas framework and did not involve statistical evidence.

ments, he establishes a *prima facie* case of discrimination and creates a rebuttable presumption that he was fired because of his race. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Once a *prima facie* case is established, Brach may rebut the inference of discriminatory discharge by articulating a legitimate, nondiscriminatory reason for Plair's termination. *Pilditch v. Board of Educ. of City of Chicago,* 3 F.3d 1113, 1117 (7th Cir.1993), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1065, 127 L.Ed.2d 385 (1994). If Brach provides a non-discriminatory reason for dismissing Plair, Plair must demonstrate that Brach's stated reason for dismissing him is a pretext for discrimination. *See, e.g., Hong v. Children's Memorial Hospital,* 993 F.2d 1257, 1261–62 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994).

■ The parties concede for purposes of summary judgment that Plair can make out a *prima facie* case of discrimination.[2] Brach articulates several non-discriminatory reasons why Plair was fired, stating that: (1) Plair left the work area before the end of his shift without permission; (2) Plair did not punch out when he left the plant and Plair's time card was punched out after he departed; (3) the checker sheet for October 26–27 reflected that Plair had worked a complete shift; and (4) Plair was stopped in an area behind the plant late at night and gave inconsistent reasons for being there. Klepper Dep. at 872–873, 875, 877–78, 1043–44; 1341–42. The burden therefore shifts to Plair to demonstrate that Brach's reasons are pretextual. Plair may demonstrate pretext by showing (1) that the proffered reasons have no factual basis; (2) that the proffered reasons were insufficient to motivate his discharge; or (3) that the proffered reasons did not actually motivate his discharge. *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988).

### 1. *Factual Basis*

■ Plair contends that Brach's proffered reasons for his discharge lack a factual

basis. Plair asserts that he did not violate Brach's rule forbidding early departure without permission. Plair notes that he was upset on the night of October 26–27 because of his impending divorce and that his supervisor, Joseph Jackson, would have let him leave work early had he known of Plair's troubles. Plair Dep. at 72–76; Jackson Dep. at 190–191. This evidence is wholly irrelevant. Although Plair claims that he looked for Jackson to tell him he wanted to go home early, he does not suggest that he ever found Jackson or in fact secured permission to leave. Plair Dep. at 255–57. Plair also states that an employee is normally permitted to leave once he finishes his duties at the plant and punches out. Jackson Dep. at 138. Again, this does not challenge the factual basis of Brach's claim; although Plair claims to have finished his duties, he does not assert that he ever punched out. Plair Dep. at 248. Finally, Plair asserts that his departure was authorized because he left with Arco Jefferson, a relief supervisor, and because supervisors may authorize an employee to leave early. Schroeder Dep. at 183. However, the deposition testimony cited by Plair establishes only that a relief supervisor is capable of acting as a supervisor if the regular supervisor was ill or on vacation. *Id.* at 182. Plair does not dispute that Jackson, his regular supervisor, was at the plant during his shift.

■ Plair also contends that his failure to punch out and the incorrect checker sheet and time card played no role in his dismissal. Plair notes that a negligent failure to punch out did not always warrant dismissal and that generally Brach dismissed employees for time card violations only after a determination that the employee knew someone else would punch his card. Schroeder Dep. at 124–25, 240. Plair asserts that he simply forgot to punch out and attests he does not know who, if anyone, punched his card out after he left. Plair Dep. at 248; Plair Aff. ¶ 2. Plair further notes that Jefferson, not Plair, was responsible for the checker sheet.

---

2. Brach expresses doubts about whether Plair can establish that he was meeting Brach's reasonable expectations at the time he was fired.

However, Brach fails to proffer evidence supporting a conclusion that no genuine question of material fact exists on this issue.

Jackson Dep. at 215; Morrison Dep. at 186. Finally, Plair cites Klepper's testimony that he did not have any evidence indicating Plair knew someone else would punch out his time card and that Joe Kingsley could not explain how Plair's time card was punched out. Klepper Dep. at 1141, 1186.

 Plair's arguments are meritless. The inquiry in a Title VII case is limited to whether Brach "gave an honest explanation of its behavior." *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). An honest belief Plair falsified time records provides Brach with a legitimate reason to discharge him, whether Plair actually falsified the records or not. *See Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir.1994); *Billups v. Methodist Hospital of Chicago*, 922 F.2d 1300, 1304 (7th Cir.1991). The evidence Plair cites does not suggest Klepper did not honestly believe Plair falsified time records. Plair produces no evidence to contradict Klepper's testimony that in the course of his investigation of Plair, he reviewed a time card with Plair's name on it that showed a punch out time over an hour after Plair left the Brach plant and a checker sheet reporting that Plair had worked until the end of his shift at 12:30 a.m. Klepper Dep. at 798, 1154–58, 1164, 1166; Schroeder Aff., Ex. G. Plair also does not dispute he told Klepper on March 30 that he had left the plant early and without punching out. Def.Ex. H. Significantly, Plair does not suggest Klepper knew of any evidence exonerating Plair. Although Jefferson was responsible for filling in the checker sheet, it is uncontested that Plair and Jefferson left the plant together. The evidence provides a reasonable basis for believing that Plair arranged for falsification of his time records; Plair's contention that further evidence was

missing does not make Klepper's explanation unworthy of credence.

Plair also notes that neither his dismissal letter nor the employee termination form initialled by Klepper stated specifically that Plair had caused another employee to punch his time card out. Def.Ex. S; Pl. Exs. F, G. Plair notes two other employees terminated by Klepper were specifically informed that they were terminated for permitting others to punch their time cards. Pl.Exs. I, J. However, both the dismissal letter and employee termination form mentioned falsification of time records as a reason for discharge. Def.Ex. S.; Pl.Exs. F, G. No inference of pretext is warranted when stated reasons refer "in substance if not word choice" to the same conduct. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1145–46 (7th Cir.1994).[3]

Plair does not dispute that he was stopped outside the Brach plant after leaving work. Indeed, Plair told Klepper that he had been stopped outside the Brach plant and that he had told the police he was looking for rocks, not Jefferson's gold chain. Def.Ex. H. It is similarly undisputed that Klepper received reports of Plair's conduct outside the plant from Frank Viero and that Jefferson did not provide proof of purchase of the gold chain he claimed to have lost after Klepper requested that he do so. Klepper Dep. at 1043–44, 1216–17. Plair notes that Brach's rules do not ordinarily dictate what a person can do once he leaves work. Klepper Dep. at 1344. However, Brach does not allege that Plair's presence outside the plant alone triggered Plair's dismissal. Instead, Klepper testified that Plair's presence behind the plant, coupled with Plair and Jefferson's inconsistent explanations of their presence, were additional factors aggravating Plair's

---

**3.** Plair also cites a handwritten report on Brach stationary stating that Plair and Jefferson "weren't discharged for time card violations because we couldn't prove who punched them out" and notes that Bernard Schroeder, Brach's Vice President of Industrial Relations, was not aware that Plair had falsified employment, production, or time records. Pl.Ex. K; Schroeder Dep. at 242. Plair fails to establish a proper foundation for either the report or Schroeder's testimony. Klepper did not recognize the report at his deposition and could not identify the author. Klepper Dep. at 1055–56. Plair produces no other evidence that the report was written by any Brach employee involved in the termination decision. Although Schroeder was with Klepper when Klepper received the initial report of Plair and Jefferson's activities, Plair provides no evidence that Schroeder participated in Klepper's investigation or the decision to fire Plair. Schroeder Dep. at 89.

other rule violations. Klepper Dep. at 873–74.[4]

### 2. *Insufficiency of Rule Violations*

■ Plair fails to produce evidence that the reasons given for his termination were factually baseless. However, a Title VII plaintiff may show that the reasons given by his employer were insufficient to warrant his dismissal if (1) employees outside the protected class, (2) who were involved in acts of comparable seriousness, (3) were retained while plaintiff was not. *Hiatt v. Rockwell Intern. Corp.*, 26 F.3d 761, 770 (7th Cir.1994). *See also McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.

■ Plair produces the disciplinary records of over 130 non-African American Brach employees who purportedly engaged in behavior comparable to Plair's and were not terminated by Brach. For the most part, the employees cited by Plair clearly did not engage in acts of comparable seriousness. Many of the employees Plair cites either left the work area without authorization *or* failed to punch out *or* had another employee punch their card. However, Brach claims to have fired Plair for leaving his work area *and* failing to punch out *and* altering time records. Yet other employees cited by Plair engaged in entirely different rule violations, ranging from absenteeism and poor performance to insubordination and theft. Comparable employees need not have engaged in identical rules violations, only those of comparable seriousness. *See Johnson v. Artim Transportation System, Inc.*, 826 F.2d 538, 543–44 (7th Cir.1987), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988). However, it is not the court's proper role to assess the relative seriousness of infractions of an employer's rules and decide whether the employer's responses were commensurate. *Garcia v. Riverdale Plating & Heat Treating Company*, 1993 WL 388681 at *5 (N.D.Ill.1993), *aff'd*, 48 F.3d 1221 (7th Cir. 1995); *see also Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464–65 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).[5] Plair has not provided this court with any basis for deciding which acts are "comparably serious" to the rule violations cited by Brach in discharging Plair; the court therefore cannot conclude that the majority of employees cited by Plair provide the basis for a fair comparison.

Only seven of the employees cited by Plair as "comparable" were disciplined short of termination for leaving the work area without authorization and failing to punch out and falsifying time records.[6] However, none of these employees is fairly comparable to Plair. David Gallegos, an hispanic employee, was given a final warning and three-day suspension by Klepper for leaving the plant early without reporting early to his supervisor. Pl.Ex. O, Gallegos. However, Klepper notes that Gallegos was stopped upon his departure from the plant and that there was no evidence of any factors aggravating the rule violations. Affidavit of John Klepper ("Klepper Aff.") ¶ 4. Stanley Byk, a white employee, was suspended by Klepper for the same three rule violations as Plair. Pl.Ex. O, Byk. However, Byk claimed to have accidentally punched out another's card in addition to his own, and videotape surveillance could neither verify nor negate his story. Klepper Aff. ¶ 7. Dwight Cecil, a white employee, and Esmer-

---

4. Plair suggests that his presence outside the plant is wholly irrelevant to this case, noting that this court previously granted Plair's motion *in limine* to exclude reference to cases of candy found behind the Brach plant and Plair's subsequent arrest on misdemeanor charges. *See* Memorandum Opinion and Order, No. 94 C 244 (N.D.Ill. Aug. 30, 1994). Plair contends that the sole purpose of this evidence is to suggest, without basis, that he was engaging in unlawful conduct. However, in granting the motion *in limine* the court expressly noted that Plair's presence behind the plant under suspicious circumstances might be relevant to rebut a claim of pretext. *Id.* at 6.

5. The court notes, for example, that Plair identifies numerous employees who were not discharged for theft. Although theft might be considered of "comparable seriousness" to Plair's alleged rule violations, Brach produces evidence that it did not discharge employees for a first theft prior to January 1993. Def.Ex. DD.

6. An eighth employee, Edwviges Vazquez, was terminated for violating the same rules as Plair. Pl.Ex. O, Vazquez. Even if "comparable," Vazquez does not prove Plair's pretext claim because he, like Plair, was terminated for the rule violations.

aldo Dionido, an Asian employee, were also suspended by Klepper. Pl.Ex. O., Cecil; Pl. Ex. O, Dionido. Cecil's suspension arose out of his departure from his work area to punch in the time card of another employee in accord with an unofficial policy of Cecil's department, while Dionido admitted that he repeatedly punched out a piece of paper in order to insure that his own time card would reflect the correct quitting time. Klepper Aff. ¶¶ 8–9.

None of the remaining three employees were disciplined by Klepper. Moreover, each was disciplined over five years before Plair's termination. Frank Contacessi, a white employee, was suspended for nine days after leaving the plant early and having another employee punch his time card in 1986. Pl.Ex. O, Contacessi. Two hispanic employees, Jesus Morales and Manuel Torres, were given warnings in 1984 for having other employees punch their time cards so they could leave early. Pl.Ex. O, Morales; Pl.Ex. O., M. Torres. A difference in treatment cannot be conclusively viewed as intentional discrimination when different decisionmakers are involved. *Timms v. Frank*, 953 F.2d 281, 287 (7th Cir.1992), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2307, 119 L.Ed.2d 228 (1992). When, as here, the difference in decisionmakers is coupled with an entirely different temporal context, the comparison is too weak to raise a genuine issue of material fact in a Title VII case. *See Alley v. General Elec. Capital Corp.*, 1993 WL 321736 at *6 (N.D.Ill.1993), *aff'd*, 37 F.3d 329 (7th Cir. 1994).

Finally, the court notes that Plair's rule violations occurred under unique circumstances. Klepper states that Plair was fired not only because of the rule violations, but also because of the suspicious circumstances surrounding Plair's subsequent presence behind the Brach plant. Plair does not suggest that any of the employees cited violated Brach's rules under similarly suspicious circumstances. Accordingly, Plair's "parade of comparables" does not raise a genuine issue of fact as to pretext.

### 3. *Racial Prejudice as Motivating Factor*

 Plair cites affidavits from three African American Brach employees to show that racial prejudice more likely motivated Brach's employment decision than did the alleged rule violations. Each of the employees alleges that Klepper was racially biased. In general, the probative value of other discriminatory acts depends on their relevance to the plaintiff's complaints and the nature of the discrimination charge. *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1424 (7th Cir.1986). Evidence of other discriminatory acts may be probative of a general policy of discrimination. *See, e.g., Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985); *Massie v. Indiana Gas Co.*, 752 F.Supp. 261, 267 (S.D.Ind.1990). However, a showing of other instances of discrimination is not a substitute for a showing of injury to the plaintiff. *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1004 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994).

 Simon Francis and Jake Wright claim that Klepper failed to remedy racial discrimination by their supervisors at Brach. Francis attests that he complained to Klepper that his supervisors were giving him worse jobs because of his race and mentioned an incident in which his supervisor screamed racial epithets at him, but that Klepper did not do anything about his complaints. Francis Aff. ¶¶ 11–13. Jake Wright claims that he complained to Klepper that his supervisors were treating him differently because of his race and states that Klepper refused to help him. Wright Aff. ¶¶ 3–5. Wright also states that he was later fired by Klepper for insubordination after a confrontation in which his supervisor threatened him. *Id.* ¶¶ 6–8. A supervisor's refusal to discipline a subordinate for racial remarks is not in itself enough to support a claim under Title VII absent some showing of a nexus between the two events. *Garcia*, 1993 WL at 388681 at *4. Wright and Francis' testimony therefore does not support a reasonable inference that Plair was fired because of his race; there is no showing that Wright and Francis' situa-

tion was in any way connected to Plair's discharge.

■ Garland Williams states that he received a written final warning for making unauthorized telephone calls while at work. Williams Aff. ¶ 4–5. Williams states that an investigation later revealed that Darrell Mills, a white employee, made the unauthorized calls. Williams Aff. ¶¶ 6–9. Klepper refused to void the warning letter and did not issue a letter to Mills. Williams Aff. ¶¶ 11–12. Williams further attests that Klepper later fired him for theft after a white employee gave him two half-used cans of spray paint. Williams Aff. ¶¶ 13–19. There is no substantial nexus between Williams' allegations and Plair's discharge—although both were disciplined by Klepper, they were disciplined under different circumstances for different alleged rule violations. Williams also does not allege that Klepper articulated race as a reason for his discipline, only that Klepper's discipline was unreasonable and therefore racially motivated. Because there is no nexus to Plair's termination and because there is no direct evidence of Klepper's intent in punishing Williams, Williams' testimony does not raise a reasonable inference that Plair was fired because of his race nor does his testimony establish a question of material fact as to pretext.

#### 4. *Statistical Evidence*

■ Plair relies on statistical evidence to prove that race played a role in his discharge. Statistics are of relatively limited utility in an individual discrimination claim; standing alone, statistics cannot establish a case of individual disparate treatment. *Gilty v. Oak Park*, 919 F.2d 1247, 1252, 1253 n. 8 (7th Cir.1990). Unless there are independent grounds for disbelieving an employer's explanation for a termination, there is a stringent degree of certainty required of statistical evidence. *Bush v. Commonwealth Edison Co.*, 778 F.Supp. 1436, 1444 (N.D.Ill. 1991), *aff'd*, 990 F.2d 928 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994).

The statistical evidence Plair proffers is not so stringently certain as to warrant a reasonable inference that he was discharged on account of his race. Plair produces an expert report concluding that African American Brach employees are 7.3 times more likely than non-African American employees to be terminated for disciplinary reasons and that, excluding temporary employees from the pool, African–American employees are 3.4 times more likely than non-African American employees to be terminated. Pl.Ex. T (Update) at 4. However, this report is of very limited probative value. Plair's expert makes no effort to analyze the number of disciplinary terminations in light of the total number of disciplinary actions taken against African American and non-African American employees. Deposition of Xiaochang Jin ("Jin Dep") at 289–91. Moreover, Plair's statistical analysis proves very little with regard to the specific rule violations with which Plair was charged. Plair's analysis considers disciplinary terminations in general. However, Brach produces evidence that among employees charged with the same rule violations for which Plair was dismissed, African American employees are not significantly more likely to be discharged than non-African American employees. Def.Ex. AA.

■ Plair also proffers a chart of disciplinary actions in which Klepper was a supervisor. Pl.Ex. W. The chart reveals that 11 of 14 (78.6 percent) of African Americans charged with violation of time card regulations, leaving the work area, or falsification of company records were terminated; the chart also shows that only 13 of 22 (59.1 percent) of non-African Americans charged with the same infractions were terminated. This evidence is entitled to little weight given the extremely small sample size; the percentage difference between the two groups rests on the experience of three non-African American employees. Where even a minor change in the raw disciplinary data would eliminate the significant deviation, statistics do not prove that an employment decision was motivated by racial bias. *Soria v. Ozinga Bros., Inc.*, 704 F.2d 990, 995 (7th Cir. 1983).

#### 5. *Conclusion*

Plair fails to produce evidence from which a rational factfinder could find that Brach's

reasons for his termination lacked a factual basis, were insufficient to motivate his termination, or did not in fact motivate his termination. Because Plair fails to raise a genuine issue of material fact as to pretext, Brach is entitled to summary judgment. *See Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1124 (7th Cir.1994).

### CONCLUSION

The motion for summary judgment is granted. Judgment is entered in favor of defendants E.J. Brach & Sons, Inc. and E.J. Brach Corporation and against plaintiff John Plair.