Loisann NEVINS, Plaintiff,

v.

**BLOCKBUSTER ENTERTAINMENT GROUP, and Blockbuster Video, Defendants.**

No. CV 95–3042 (ADS).

United States District Court, E.D. New York.

Dec. 26, 1996.

Rosenthal & Curry, East Meadow, NY, for Plaintiff, Jerrold P. Rosenthal, of counsel.

Gay, Maher & Brown, New York City, for Defendants, Darrell S. Gay, Phillip R. Scott, of counsel.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This gender discrimination action arises from the claims of the plaintiff, Loisann Nevins ("Nevins" or the "plaintiff") against the defendants, Blockbuster Entertainment Group and Blockbuster Video (collectively "Blockbuster" or the "defendants") based on the alleged violations of her civil rights under 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the New York Executive Law § 296.

Presently before the Court is the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. According to Blockbuster, the plaintiff is unable to establish a

prima facie case of unlawful discrimination, or that the nondiscriminatory reason for her discharge was a pretext for such discrimination. Nevins opposes the motion arguing that there are questions of material fact sufficient to preclude summary judgment.

## I. *Background*

The plaintiff, Loisann Nevins, is resident of Suffolk County. Blockbuster Entertainment Group is an unincorporated division of Viacom, Inc., a Delaware corporation doing business in the state of New York. Blockbuster, Inc. is a Texas corporation doing business in the state of New York. The defendants operate retail video sales and rental stores throughout New York and the rest of the country.

On December 31, 1990, Nevins was hired by the defendants as an at will employee to manage their store in Holbrook, New York. Since then she has worked as a store manager at other Blockbuster locations in Copiague, Garden City, Plainview, Huntington Station, Valley Stream and Westbury, New York. Nevins admits that during the course of her employment she became familiar with company policies regarding "progressive discipline," and that certain "gross violations," such as "time clock violations" and "failure to appropriately secure store assets, funds or property" may result in termination.

According to the plaintiff's 3(g) statement, on October 17, 1994, she was "summoned" to meet with Dina D'Onofrio ("D'Onofrio"), the Defendants' Human Resources Representative, Michael Ratchford ("Ratchford"), the District Manager and James Rutkowski ("Rutkowski"), the Regional Director. During this meeting, Nevins was discharged as the result of gossip regarding a "clandestine" relationship she was reputed to be having with Rutkowski. All parties agree that this rumor was false. According to the defendants, this meeting was to "inquire whether Nevins had said anything negative" about other Blockbuster employees. The discharge was short lived because, as the parties concur, Rutkowski contacted the plaintiff by telephone the next day, October 18, 1994, and rehired her.

According to Nevins, during the telephone conversation, which Nevins apparently taped, Rutkowski informed her "that there had been rumors that he had slept with fifteen other women employees, none of which were true" and that he "overreacted in having fired her." Further, she contends that she was rehired upon the advice of the defendants' Human Resource Director, Carter Womack, who counselled Rutkowski that he had been too hasty in his decision to terminate Nevins, and that he should apologize for the entire incident. On November 3, 1994, the plaintiff was given a "good personnel report" signed by both Ratchford and Rutkowski.

According to the defendants, some time in November 1994, Ratchford was made aware that on September 30, 1994, Nevins had engaged in a series of activities that were in violation of company policy. Specifically, on that evening the plaintiff was scheduled to work a shift ending at 11:00 p.m. However, she left the premises without authorization at 8:30 p.m., two and one-half hours early, to be with her boyfriend. Before she left, she permitted Michelle Benejean ("Benejean," also spelled "Benjean" in the parties' papers) who was not an employee, to work in the store releasing videotapes and handling cash. Further, on October 1, 1994, Nevins prepared a time card for an employee, Nadine Johnson ("Johnson"), Benejean's roommate, to reflect this additional time which Johnson had not worked. The plaintiff substantially agrees that these facts occurred. *See* Def, 3(g) Statement, Letter of Michelle Benejean, Exh. B2. of Exh. A. As a result of these latter activities, Nevins was terminated on November 16, 1994.

The plaintiff responds that the reason advanced by the defendants for her November 16 termination is merely a pretext and not the true reason. The plaintiff contends that she was discharged because of the events of October 17 and October 18, 1994, during which she was unlawfully discriminated against.

On July 31, 1995, the plaintiff filed this action alleging violations of Title VII and the New York Executive Law. She supports her claim of unlawful sex discrimination arguing:

(1) that she was originally terminated on October 17, 1994 based on an alleged affair she was having with a male employee, James Rutkowski, who was not punished for being the subject of the same rumors; and (2) on November 16, 1994, she was terminated again for altering time cards while a male employee, Carlos Morales, who did similar acts, was not disciplined.

## II. *Discussion*

### A. *The summary judgment standard in general*

A court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir.1995); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.*, 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Vann v. New York City*, 72 F.3d 1040 (2d Cir.1995).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 128 (2d Cir.1996); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution." *Gallo v. Prudential Residential Services, Ltd., Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994).

### B. *Summary judgment with regard to discrimination cases*

In the Second Circuit, summary judgment has been found to be inappropriate in numerous discrimination cases, *compare Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196 (2d Cir. 1995) (finding material issues of fact precluded summary judgment); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29 (2d Cir.1994) (same); *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219 (2d Cir.1994) (same), *with Woroski v. Nashua Corp.*, 31 F.3d 105, 109 (2d Cir.1994) (finding summary judgment appropriate); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir.1994) (same); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (plaintiff must do more than proffer the bare allegation that intent or state of mind are implicated); *Cianfrano v. Babbitt*, 851 F.Supp. 41 (N.D.N.Y.1994) (same). In *Meiri*, the Second Circuit held that a plaintiff must do more than proffer the bare allegation that intent or state of mind are implicated. Accordingly, the nonmovant must set forth "concrete" evidence substantiating his or her claim of falsity and discriminatory intent so that if believed, a jury would return a favorable verdict. If the plaintiff fails to point to such specific proof, the court should find no "genuine" issues of material fact to be in dispute under Rule 56, and should, therefore, grant summary judgment for the employer. The Second Circuit has also held and pointed out that summary judgment may be appro-

priate in discrimination cases where genuine issues of material fact are absent, even though a precaution must be exercised where intent is genuinely at issue. *See TRM Copy Centers,* 43 F.3d at 40; *Gallo,* 22 F.3d at 1224.

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### C. *The defendants' motion*

In the absence of substantial direct evidence, allegations of employment discrimination are governed by the three step burden shifting test as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). As the Second Circuit recently restated the case in *Quaratino:*

First, the plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position has remained open and was ultimately filled by non-[protected] employee. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824 ..., *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94.... Alternatively, a plaintiff may satisfy the fourth requirement to make out a *prima facie* case by showing that the discharge occurred in circumstances giving rise to an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, n. 13, 93 S.Ct. at 1824 n. 13 ...; *Montana v. First Fed. Sav. & Loan Ass'n,* 869 F.2d 100, 104 (2d Cir.1989).

Second, assuming the plaintiff demonstrates a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, clear, specific and nondiscriminatory reason for discharging the employee. *See Gallo,* 22 F.3d at 1226. Third, if the defendant satisfies this burden of production, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for [sex] discrimination. An employer's reason for termination cannot be proven to be a pretext for discrimination unless it is shown to be false *and* that discrimination was the real reason. *Hicks,* 509 U.S. at 515–17, 113 S.Ct. at 2752.

*Quaratino,* 71 F.3d at 64. New York Executive Law § 296 provides similar protections to Title VII law, and as result, is subject to the same analysis. *Id.* at 63; *Fitzgerald v. Alleghany Corp.,* 904 F.Supp. 223, 227 (S.D.N.Y.1995).

As stated above, in an employment discrimination case, summary judgment is rarely granted because discriminatory intent is generally a factual issue. In the summary judgment context, the Second Circuit has recognized that:

In an employment discrimination case, a plaintiff must show, *inter alia,* circumstances that permit an inference of discrimination on an impermissible basis, *see, e.g., Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994); *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1155 (2d Cir. 1993). When the defendant moves for summary judgment on the ground that there is an absence of evidence to support this essential element, the plaintiff's burden of producing such evidence is *de minimis. See, e.g., Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988). Nonetheless, the plaintiff cannot meet this burden through reliance on unsupported assertions. Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in his favor. The motion "will not be defeated merely ... on the basis of conjecture or surmise." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The party opposing summary judgment may not rely

simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, *L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1, 3–4 (2d Cir.1985); *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983); *Curl v. IBM Corp.*, 517 F.2d 212, 214 (5th Cir.1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976), or "upon the mere allegations or denials of the adverse party's pleading," Fed.R.Civ.P. 56(e).

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995) (affirming grant of summary judgment in a employment discrimination case where plaintiff failed to meet the "de minimis" standard under Rule 56); *see also Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (plaintiff must do more than proffer bare allegation that intent or state of mind are implicated).

■ The plaintiff contends that she was the victim of unlawful discrimination for essentially two reasons. On October 17, 1994 she was terminated "because gossip existed among the employees of the Defendants pertaining to a clandestine relationship between her and James Rutkowski." Pl. 3(g) statement at ¶ 1. Nevins, a woman who was the subject of this rumor was discharged. Rutkowski, a man subject to the same rumor, was not. While the plaintiff concedes that she was rehired the next day, she argues that her subsequent termination based on her permitting Michelle Benejean, a non employee, to work for the defendants and then altering Nadine Johnson's time card to reflect the hours Benejean had worked, was all part of an elaborate plot to have her fired. In support of her position, Nevins contends that as store manager, she was entitled to hire employees and put them on the payroll. Accordingly, granting Benejean permission to work, even if she was not on the payroll, was within her authority. Indeed, according to the plaintiff, "this policy was with the approval of and knowledge of the [defendants'] District Manager and the Regional Manager. It was not the first time nonemployees were asked to help out." In addition, Nevins contends that any "time card

editing" was done by Carlos Morales, a male assistant manager who was not fired.

The defendants argue that they are entitled to summary judgment because Nevins is unable to "show that the admitted facts, which form the basis of her discharge, infer [sic] any sex based animus on behalf of Blockbuster." The plaintiff "presents no evidentiary record to show that she was discharged under circumstances which give rise to the inference that her sex was a factor in Blockbuster's decision to terminate her employment." The Court agrees.

In her deposition transcript, Nevins admits that on September 30, 1994 she left work early, at 8:30 p.m., and had Michelle Benejean work at the store. Apparently, Benejean had worked at Blockbuster in the past but was on some kind of leave of absence. Nevins Deposition ("Dep."), May 15, 1996 at 81–83. While filling in, Benejean handled cash and released videotapes to customers. *Id.* at 83–84. Further, Nevins admits that in direct violation of company policy designating "time clock violations" as a "gross violation," in order to pay Benejean, she altered the time card of Nadine Johnson, Benejean's roommate, to include hours that Johnson did not work. *Id.* at 84–86; *see also* Def, 3(g) Statement, Letter of Michelle Benejean, Exh B2. of Exh. A. (confirming alteration of Johnson's time card to pay Benejean). These damaging admissions in the plaintiff's deposition follow:

Defendants' counsel:

Q. You made sure they [the plaintiff's subordinates] knew the rules and regulations—

Plaintiff:

A. Uh-huh.

Q. —what the rules and procedures of Blockbuster were?

A. Uh-huh.

Q. So you are familiar with those rules so you can test them?

A. Yeah.

   \*    \*    \*    \*    \*    \*

Q. Okay good.

Now, on that day of the event, you left the store early, on September 30, is that correct?

A. Correct.

Q. And you didn't get authorization from anyone at Blockbuster to leave early; is that correct?

A. I don't need to.

Q. You don't need to?

A. Uh-huh.

Q. What were your hours that day?

A. I think I scheduled myself for six hours.

Q. Six hours.

Weren't you scheduled to work to 10 o'clock at night?

A. I believe so.

Q. And you left about a little after 8 o'clock?

A. 8:30.

Q. 8:30?

A. Uh-huh.

Q. And your responsibility as store manager is to manage the store, correct?

A. Correct.

Q. And before you left the store, in fact, there was a young lady by the name of Michelle—what was her full name?

A. Michelle Benejean or something like that. I'm not sure. She had a temporary leave of absence.

Q. But she was no longer an employee of the store at that time?

A. At that time, no.

Q. And you allowed her to work in the store?

A. Correct.

Q. In working in the store, that meant you allowed her to release and allow customers to take tapes, which is the property of the store?

A. Correct.

\*　　\*　　\*　　\*　　\*　　\*

Q. And Michelle on this day, even though she wasn't an employee, was allowing people to take the tapes from Blockbuster?

A. That's correct.

Q. And she was receiving cash from people?

A. Uh-huh.

Q. And she was going into the cash drawer?

A. Sure.

Q. Now Michelle they [sic] a roommate by the name of Nadine?

A. Yes.

Q. And Nadine was an employee of Blockbuster; is that correct?

A. Correct.

\*　　\*　　\*　　\*　　\*　　\*

Q. Well, do you recall when a question was asked to you by the administrative law judge at the unemployment insurance hearing, "was any extra time added onto Nadine's time card?" your testifying, "Yes, it was"?

A. Yes, it was. I told him I offered her double time to work. I asked her. What day I put the times on, I don't remember.

\*　　\*　　\*　　\*　　\*　　\*

Q. But the hours you put in for the employee to pay her weren't the hours she was physically there; is that correct?

A. Correct.

Q. So you effectively gave a time card to the Blockbuster organization—

A. Uh-huh.

Q. —reflecting that Nadine was working when she, in fact, was not working those hours; is that correct?

A. Yes.

Nevins Dep. at 80–85.

In order to minimize these admissions, the plaintiff makes a conclusory argument that her second termination was a subterfuge to eliminate an "unpleasant atmosphere" because Nevins, as a result of her being fired and rehired was "an embarrassment" to her employer. The plaintiff however, offers no

evidence in support her position. There are no affidavits submitted in opposition to the defendants' motion and only three references to deposition transcripts, none of which are appended to Nevins' responding papers. Accordingly, no facts are set forth which could serve as the basis for finding an inference of discriminatory intent sufficient to establish even the de minimis proof required to establish a prima facie case. As a result, based on the failure to prove a prima facie case as to an inference of gender discrimination, the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted. *See Goenaga,* 51 F.3d at 19.

 Further, even if the conclusory allegations unsupported by affidavits set forth in Nevins' opposition papers were deemed to be true, the Court finds that summary judgment would nevertheless be appropriate. As set forth above, the plaintiff was terminated on October 17, 1994 as the result of rumors circulating regarding an affair she was supposedly having with Rutkowski. She was rehired the next day. For the purpose of this portion of the analysis the Court assumes that these events are sufficient to give rise to an inference of discriminatory intent and thereby establish a prima facie case. Subsequently, she was terminated after permitting a non employee to work in the store and altering a second employee's time card to account for that time, all in violation of company policy of which Nevins was admittedly aware. These events constitute a legitimate nondiscriminatory reason for the discharge. Accordingly, it becomes incumbent upon Nevins to demonstrate that this reason was false *and* that discriminatory intent was the real impetus for the decision to discharge. *Hicks,* 509 U.S. at 515–17, 113 S.Ct. at 2752. Although Nevins contends that this second termination scenario was nothing more than a sham designed to disguise unlawful discrimination, she sets forth no facts to support this conclusion. Rather, she assumes that because the two terminations happened within a period of several weeks, Title VII must somehow be implicated. Accordingly, she has failed to satisfy her burden under *Hicks.* She has failed to raise a triable material issue as to pretext, as a matter of law.

### III. *Conclusion*

Having reviewed the parties submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56 is granted and the plaintiff's complaint is dismissed; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.