# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**February 20, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

MAURICE DeVORE,               )
                             )
    Plaintiff/Appellant,     )
                             )   Davidson Chancery
VS.                           )   No. 93-3335-III
                             )
DELOITTE & TOUCHE,            )   Appeal No.
                             )   01A01-9602-CH-00073
    Defendant/Appellee.      )

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ROBERT S. BRANDT, CHANCELLOR

For Plaintiff/Appellant:

Susan S. Garner
Robert J. Turner
TURNER LAW OFFICES
Nashville, Tennessee

For Defendant/Appellee:

William S. Walton
John S. Lewis
GIDEON & WISEMAN
Nashville, Tennessee

**AFFIRMED AND REMANDED**

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves an employment discrimination action filed by a computer programmer who was discharged by a large national accounting firm because of inadequate performance. The programmer filed suit in the Chancery Court for Davidson County alleging that his former employer had terminated him because of his race and because he had filed a discrimination charge with the Equal Employment Opportunity Commission. The trial court granted the employer's motion for summary judgment, and the programmer appealed to this court. We have determined that the programmer has failed to demonstrate that he will be able to produce competent, admissible evidence concerning essential elements of his claims and, therefore, affirm the summary judgment.

## I.

Maurice DeVore joined the New York office of Touche Ross & Company as a computer programmer in June 1989. Before the end of the year, Touche Ross & Company merged with Deloitte Haskins & Sells to form the new accounting firm of Deloitte & Touche. As a result of the merger, the data processing offices of the combined firms were consolidated into a facility in Hermitage where Deloitte Haskins & Sells already had an office. Mr. DeVore was offered an opportunity to remain with Deloitte & Touche by moving to Nashville, and in June 1990 Mr. DeVore and approximately thirty-six other programmers moved to Tennessee.

Mr. DeVore had programmed in COBOL on an IBM computer while working in New York. Since the Hermitage facility did not use IBM computers, Mr. DeVore was assigned to program in COBOL on a Honeywell-Bull DPS-6 minicomputer when he began working at the Hermitage facility. He was the only transferred programmer assigned to work on a DPS-6 minicomputer; the remainder for the programmers were assigned to work on a larger Honeywell-Bull DPS-90 mainframe computer.

Deloitte & Touche offered training classes on the DPS-90 mainframe to the programmers who were moving to Tennessee but did not offer formal training on the DPS-6 minicomputer. When Mr. DeVore began working on the DPS-6 at the

Hermitage facility, he was unfamiliar with its job control language, execution language, commands, and editors. Mr. DeVore requested formal classroom training on the DPS-6 but was informed that Deloitte & Touche was not offering training classes to any of its employees on the DPS-6 at that time. As a result, Mr. DeVore's initial training on the DPS-6 came from reading manuals, working on the minicomputer itself, and asking questions of other programmers with more experience on the DPS-6. Deloitte & Touche eventually offered training classes on the DPS-6, and Mr. DeVore attended these classes.

As time passed, Mr. DeVore's supervisors became increasingly dissatisfied with his job performance. They believed that he required too much supervision and that he showed insufficient initiative and interest in working on the DPS-6 minicomputer. They were also concerned that he sometimes failed to complete work assignments within the time frames agreed upon in advance with his supervisors. Like every other programmer at the Hermitage facility, Mr. DeVore was supervised by a programmer analyst who performed formal, written evaluations of his work at six-month intervals. Mr. DeVore's performance was judged to be only "marginal" during the three six-month evaluation periods between June 1990 and December 1991. His performance between January and June 1992 "met expectations;" however, his supervisor determined that he was "not meeting expectations" for the period from June through December 1992.

On February 17, 1993, Deloitte & Touche's human resources manager met with Mr. DeVore to discuss his poor job performance. He informed Mr. DeVore that Deloitte & Touche was concerned about (1) the quality of his work, (2) his failure to complete assignments on time, (3) the amount of his work, (4) his failure to use good judgment, and (5) the unusual amount of supervision he required. Immediately after the meeting, Mr. DeVore filed a discrimination charge with the Equal Employment Opportunity Commission stating that Deloitte & Touche was subjecting him to disparate treatment because of his race.

Deloitte & Touche discharged Mr. DeVore on April 23, 1993 for inadequate job performance. Mr. DeVore filed a second charge with the EEOC asserting that Deloitte & Touche had discharged him in retaliation for the filing of his original discrimination charge. Rather than waiting for the EEOC to complete its

investigation of these charges, Mr. DeVore requested and received a right-to-sue letter.[1] On November 15, 1993, Mr. DeVore sued Deloitte & Touche in the Chancery Court for Davidson County alleging violations of Title VII of the Civil Rights Act of 1964, the Tennessee Human Rights Act, breach of contract, retaliatory discharge, malicious harassment, and intentional or negligent infliction of emotional distress and seeking actual and punitive damages.

On February 14, 1995, after both parties had taken thorough discovery, Deloitte & Touche filed a properly supported motion for summary judgment.[2] Mr. DeVore responded with an affidavit prepared by an industrial psychologist interpreting census data and other statistical data excerpted from Deloitte & Touche's affirmative action plans, copies of discrimination charges filed by other Deloitte & Touche employees, and the depositions of other present or former Deloitte & Touche employees.[3] During a hearing in March 1995, Mr. DeVore conceded that Deloitte & Touche was entitled to a summary judgment on his claims of breach of contract, intentional or negligent infliction of emotional distress, and malicious harassment.

The trial court filed a memorandum opinion in October 1995 granting Deloitte & Touche's summary judgment motion. After concluding that Mr. DeVore's complaint stated a claim for discrimination, the trial court determined that it was incumbent on Mr. DeVore to point to evidence in the record creating a genuine issue of fact that Deloitte & Touche treated him differently than other programmers because of his race. The trial court concluded that Mr. DeVore had not presented any direct evidence of discrimination. Turning to Mr. DeVore's circumstantial evidence, the trial court refused to consider the evidence concerning the beliefs of two former Deloitte & Touche employees that they had been victims of discrimination because

---

[1]*See* 29 C.F.R. § 1601.28 (West 1997).

[2]Deloitte & Touche supported its summary judgment motion with (1) the deposition and affidavit of Bruce Webb, the Director of Human Resources and Administration, (2) Mr. DeVore's interrogatory responses and deposition, and (3) the deposition of Iain Robertson who was Mr. DeVore's supervisor at the Hermitage facility for approximately two years.

[3]In addition to the affidavit of Gary G. Kaufman, the industrial psychologist, Mr. DeVore submitted (1) discrimination charges filed by two other Deloitte & Touche employees, (2) the deposition of Steve Mazzarda, a former Deloitte & Touche programmer analyst, (3)the deposition of Erik Bunes, an applications manager with Deloitte & Touche, and (4) Deloitte & Touche's interrogatory responses. Later, Mr. DeVore filed the depositions of (1) Gary G. Kaufman, (2) Robert A. Margo, an economics professor, (3) Fionnuala Sinclair, a former Deloitte & Touche project leader, and (3) Christopher Williams, Jr., a former Deloitte & Touche supervisor.

it did not comply with Tenn. R. Civ. P. 56.05. The trial court also concluded that Mr. DeVore's statistical proof had no probative value.

## II.

A summary judgment proceeding provides an efficient and effective vehicle for resolving cases that can be decided on legal issues alone. *See Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988). It should not, however, be used to replace a trial when there is a need to resolve disputed factual issues or to choose among various inferences that could permissibly be drawn from undisputed facts. *See Byrd v. Hall*, 847 S.W.2d 208, 216 (Tenn. 1993). Thus, summary judgments are warranted only when the moving party has demonstrated that there are no genuine disputes regarding the relevant facts and that it is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Summary judgments do not arrive in the appellate courts clothed with the presumption that they are correct. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996). Appellate courts must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). This process requires appellate courts to review the evidence supporting and opposing the summary judgment in the light most favorable to the nonmoving party and to draw all reasonable inferences from the facts in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996). Appellate courts should affirm a summary judgment only when they find that the only conclusion supported by the undisputed facts is that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d at 26.

Motions for summary judgment go to the merits of the challenged claim or defense and, therefore, should not be taken lightly. *See Byrd v. Hall*, 847 S.W.2d at

210; *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978). Once the moving party carries its initial burden of demonstrating that there are no material factual disputes and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmoving party to demonstrate either that material factual disputes exist or that the moving party is not entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.06; *Bain v. Wells*, 936 S.W.2d at 622.

It is now beyond reasonable debate that parties may seek a summary judgment on the ground that the nonmoving party will be unable to present sufficient admissible evidence at trial to withstand a motion for directed verdict, *see Byrd v. Hall*, 847 S.W.2d at 212, 215, or that the nonmoving party will be unable to prove an essential element of its case. *See Zimmerman v. Elm Hill Marina*, 839 S.W.2d 760, 763 (Tenn. Ct. App. 1992); *Goodman v. Phythyon*, 803 S.W.2d 697, 703 (Tenn. Ct. App. 1990). Non-moving parties may stave off such motions by (1) pointing to evidence overlooked or ignored by the moving party that creates a material factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a genuine material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *See McCarley v. West Quality Food Serv.*, 948 S.W.2d 477, 479 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d at 215 n.6. Nonmoving parties who do not carry this burden face summary dismissal of the challenged claim because, as the Tennessee Supreme Court has observed, the "failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial." *See Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d at 280.

# III.
## MR. DEVORE'S DISCRIMINATION CLAIMS

We turn first to Mr. DeVore's discrimination claims which will be considered together because their elements and the parties' burdens of proof and of going

forward with the evidence are essentially the same.[4] While the facts are essentially undisputed, Mr. DeVore asserts that the inferences and conclusions that could be drawn from the facts require denial of Deloitte & Touche's summary judgment motion. If Mr. DeVore is to succeed with these claims, he must be able to prove that Deloitte & Touche's proffered reason for his discharge was pretextual. We agree with the trial court's conclusion that Mr. DeVore has not presented evidence meeting the requirements of Tenn. R. Civ. P. 56.06 that demonstrates that he will be able to carry this burden at trial.

## A.

The burden of proving the ultimate issue of discrimination is at all times on the employee in a discrimination case. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093-94 (1981); *Brenner v. Textron Aerostructures*, 874 S.W.2d 579, 583 (Tenn. Ct. App. 1993). The employee may establish a prima facie case of discrimination either by using the traditional criteria set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973), or by producing direct, circumstantial, or statistical evidence of discrimination. *See Loeffler v. Kjellgren*, 884 S.W.2d 463, 469 (Tenn. Ct. App. 1994); *Brenner v. Textron Aerostructures*, 874 S.W.2d at 583; *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn. Ct. App. 1984).

Once the employee makes out a prima facie case of discrimination, the burden shifts to the employer to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the employment action. *See Loeffler v. Kjellgren*, 884 S.W.2d at 470; *Brenner v. Textron Aerostructures*, 874 S.W.2d at 583; *Silpacharin v. Metropolitan Gov't*, 797 S.W.2d 625, 629 (Tenn. Ct. App. 1990). When the employer has presented a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the employee to prove that the employer's explanation is pretextual or not worthy of belief. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093; *Brenner v. Textron Aerostructures*, 874 S.W.2d at 583, 587; *Silpacharin v. Metropolitan Gov't*, 797 S.W.2d at 629.

---

[4]*See* Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e-2000e-17 (West 1994); 42 U.S.C.A. § 1981 (West 1994); Tenn. Code Ann. §§ 4-21-301, -401 (1991).

The initial burden of establishing a prima facie case of unlawful employment discrimination is not onerous. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 253, 101 S. Ct. at 1094; *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203-04 (2d Cir. 1995). Employees opting for the *McDonnell Douglas Corp. v. Green* approach need only prove (1) that they are members of a protected class, (2) that their work performance satisfied their employer's reasonable expectations, (3) that they were discharged, and (4) that their employer replaced them with someone who is not a member of a protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S. Ct. at 1824; *Baron v. W.W. Grainger, Inc.*, 944 F. Supp. 689, 693 (N.D. Ill. 1996); *Brenner v. Textron Aerostructures*, 874 S.W.2d at 584. Presenting proof establishing each of these elements creates a rebuttable presumption that the employer discriminated unlawfully. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094.

## B.
### MR. DEVORE'S PRIMA FACIE CASE

We consider first whether Mr. DeVore has made out a prima facie case of racial discrimination. Since he lacked direct proof that Deloitte & Touche had discriminated against him because of his race, Mr. DeVore elected to follow the *McDonnell Douglas Corp. v. Green* approach. The record contains undisputed evidence that Mr. DeVore is a member of a protected class and that he was discharged from his job. The evidence is much less clear concerning whether Mr. DeVore's job performance met Deloitte & Touche's reasonable expectations and whether Deloitte & Touche replaced Mr. DeVore with someone who was not a member of the protected class.

Mr. Erik Bunes, a Deloitte & Touche applications manager, was quite guarded during his deposition but conceded that Deloitte & Touche hired programmer trainees after discharging Mr. DeVore and that all these trainees were white. Mr. DeVore also insisted that his job performance was acceptable and that Deloitte & Touche's expectations were unreasonable. Even though Deloitte & Touche took strong issue with Mr. DeVore's appraisal of his own performance, we must view the evidence in the light most favorable to Mr. DeVore. Accordingly, we find that Mr. DeVore

carried his initial burden of making out a prima facie case of discrimination based on race.

## C.

### DELOITTE & TOUCHE'S PROFFERED EXPLANATION

Once Mr. DeVore made out his prima facie case, the burden shifted to Deloitte & Touche to rebut the presumption of unlawful discrimination by articulating a legitimate nondiscriminatory reason for Mr. DeVore's discharge. *See Randall v. Howard Univ.*, 941 F. Supp. 206, 211 (D.D.C. 1996); *Plair v. E.J. Brach & Sons, Inc.*, 931 F. Supp. 555, 562 (N.D. Ill. 1995). Deloitte & Touche carried this burden by submitting the depositions of Mr. DeVore's superiors who detailed the history of his unsatisfactory performance. These depositions were buttressed by the records of the company's formal evaluations of Mr. DeVore's performance from June 1990 to December 1992. This evidence established that Deloitte & Touche discharged Mr. DeVore not because of his race but because of his inadequate job performance.

Deloitte & Touche's articulation of a legitimate, nondiscriminatory reason for discharging Mr. DeVore dispelled any inference raised by Mr. DeVore's prima facie showing of discrimination, *see Gagné v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir. 1989), and so the presumption of discrimination dropped out of the case at that point. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 255 n.10, 101 S. Ct. at 1095 n.10. The burden of going forward also shifted back to Mr. DeVore to demonstrate that Deloitte & Touche's proffered reason for discharging him was not the true reason behind his firing and that the true reason was unlawful racial discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 113 S. Ct. 2742, 2747 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095. With the burden of persuasion squarely on his shoulders, Mr. DeVore was faced with the summary dismissal of his discrimination claims if he was unable to demonstrate that he could prove that Deloitte & Touche's proffered reason for his discharge was pretextual. *See Nevins v. Blockbuster Entertainment Group*, 950 F. Supp. 60, 66 (E.D.N.Y. 1996); *Randall v. Howard Univ.*, 941 F. Supp. at 215; *Plair v. E.J. Branch & Sons, Inc.*, 931 F. Supp. at 567.

## D.

**MR. DEVORE'S PROOF OF PRETEXT**

Mr. DeVore offered three responses to Deloitte & Touche's assertion that it discharged Mr. DeVore because of his job performance, not his race. First, he relied on the belief of two other former employees that Deloitte & Touche discriminated against them because of their race. Second, he insisted that he believed that Deloitte & Touche intentionally caused his poor job performance by not training him adequately on the DPS-6 and by assigning him to a program project that was destined to fail. Third, he presented statistics purporting to show that Deloitte & Touche employed too few African-American programmers at its Hermitage facility. The trial judge determined that these responses, singly and together, were insufficient to create a material factual dispute with regard to Deloitte & Touche's proffered reasons for discharging Mr. DeVore.

**THE LIGGIN AND WILLIAMS DISCRIMINATION CLAIMS**

Mr. DeVore sought to rebut Deloitte & Touche's explanation for his discharge by submitting evidence concerning discrimination charges filed by two other Deloitte & Touche employees. The trial court declined to consider these employees' conclusory statements and beliefs because they were inadmissible under Tenn. R. Civ. P. 56.05. The trial court also determined that one of the employee's account of a single isolated pejorative racial comment by a Deloitte & Touche manager was de minimis.

Christopher Williams, Jr. worked for Deloitte & Touche from June 1973 to August 1992 when his position as supervisor of computer operations was eliminated. Mr. Williams was one of the twelve African-American employees who were transferred from New York to the Hermitage facility with Mr. DeVore. In August 1992 he filed a charge against Deloitte & Touche stating that he "believed" that Deloitte & Touche had discriminated against him because of his race and his age.[5] In a later deposition, he also testified that Erik Bunes had once commented that "one

---

[5]The EEOC later determined that "[t]here is insufficient evidence to support the Charging Party's allegations based on race and age." Notwithstanding the EEOC's findings, Mr. Williams filed a discrimination action against Deloitte & Touche in United States District Court. This suit was dismissed in September 1994 for lack of prosecution.

of the reasons why he didn't like black people . . . [was because] . . . they're the majority of the ones that are committing most of the crimes."

Mr. DeVore also introduced the discrimination charge filed by Frederick J. C. Liggin, a programmer analyst who had worked for Deloitte & Touche since June 1989. Mr. Liggin asserted that he had been subjected to a continuing pattern of discrimination with regard to hiring, training, promotions, and increases in compensation and other benefits. After he resisted Deloitte & Touche's efforts to depose him, the trial court entered an order on March 8, 1995, stating, in part, "that if . . . Frederick Liggin, is unwilling to make himself available for a discovery deposition . . . prior to the trial of this cause, upon proper motion from the Defendant, the Plaintiff may be prevented by the Court from calling Mr. Liggin as a witness and his testimony could be excluded." Mr. Liggin filed his own discrimination lawsuit against Deloitte & Touche in May 1995, and by the time of the hearing on the summary judgment in this case, Deloitte & Touche had still been unable to take Mr. Liggin's discovery deposition.

The trial court would have been justified to ignore the documentary proof regarding Mr. Liggin's claim because of his evasion of Deloitte & Touche's efforts to depose him. Despite this infirmity, the proof of Mr. Liggin's claims and Mr. Williams's claims is not sufficient to create a material factual dispute regarding Deloitte & Touche's reason for discharging Mr. DeVore for two reasons. First, the alleged unrelated experiences of other employees is not relevant to Mr. DeVore's claim. *See Schrand v. Federal Pac. Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988). Second, conclusory allegations and statements of belief do not satisfy Tenn. R. Civ. P. 56.06. *See Jones v. Lewis*, 874 F.2d 1125, 1128 (6th Cir. 1989); *Fowler v. Happy Goodman Family*, 575 S.W.2d at 498 *Yater v. Wachovia Bank*, 861 S.W.2d 369, 373 (Tenn. Ct. App. 1993). Thus, an employee's uncorroborated, subjective perception that he or she suffered discrimination is not probative evidence and cannot create a genuine issue of fact. *See Davis v. Monsanto Chemical Co.*, 858 F.2d 345, 347 (6th Cir. 1988); *Murray v. Sears, Roebuck & Co.*, 722 F. Supp. 1500, 1504 (N.D. Ohio 1989).

The trial court was also justified in concluding that the racially derogatory statements attributed to Mr. Bunes by Mr. Williams were insufficient to create a

material factual dispute about the authenticity of Deloitte & Touche's proffered reasons for discharging Mr. DeVore. While an employer's statements can provide evidence of discrimination, *see Flynn v. Shoney's, Inc.*, 850 S.W.2d 458, 460 (Tenn. Ct. App. 1992), the statements attributed to Mr. Bunes lack the required connection to Mr. DeVore's discharge. This comment, if made, was an isolated statement that was neither directed toward Mr. DeVore nor made in a context having any relation to Mr. DeVore's discharge. *See Gagné v. Northwestern Ins. Co.*, 881 F.2d at 314; *Brenner v. Textron Aerostructures*, 874 S.W.2d at 585-86.

### MR. DEVORE'S BELIEFS ABOUT DELOITTE & TOUCHE'S MOTIVES

Mr. DeVore also asserts that Deloitte & Touche purposefully caused his poor performance in order to have an acceptable reason for discharging him. To substantiate this claim, Mr. DeVore points out that Deloitte & Touche failed to provide him with formal classroom training on the DPS-6 minicomputer before assigning him to work on the equipment and that Deloitte & Touche assigned him to projects that were difficult to perform. While this conduct may be indicative of management shortcomings, it is not proof that Deloitte & Touche treated Mr. DeVore differently because of his race.

Mr. DeVore was unable to present evidence demonstrating that Deloitte & Touche systematically denied African-American employees the same training opportunities that were being provided to white employees. Mr. DeVore himself recounted the classroom and on-the-job training he received while working for Deloitte & Touche. While he took issue with Deloitte & Touche's failure to provide him with classroom training on the DPS-6 before he began working with the equipment, he conceded that Deloitte & Touche did not, at that time, provide this training to any other employee. He also conceded that Deloitte & Touche eventually provided him and other employees with formal training on the DPS-6 before his final performance evaluation which concluded that his work was "not meeting expectations."

In similar fashion, Mr. DeVore's complaints about being assigned to the Data Download Project do not call into question Deloitte & Touche's race-neutral explanation for his discharge. Both African-American and white employees had

worked on this project with varying degrees of success. Even if we were to assume that the project was too difficult for Mr. DeVore, Deloitte & Touche had the right to assign him to a difficult job absent an illegal motive. *See Palucki v. Sears Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989).

Merely taking issue with the soundness or reasonableness of an employer's business decisions is not sufficient to establish a racial discrimination claim. *See Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986). These claims focus on the employer's motives and intent, not on its business judgment. *See Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). In the words of one court, the federal statutes prohibiting discrimination were

> not intended to be [vehicles] for judicial second-guessing of employment decisions nor [were they] intended to transform the court into personnel managers . . . regardless of whether [the employer] made the "right" decision (in terms of fairness or wise business practices), this Court can not send [a discrimination] case to a jury where there is a complete absence of evidence of discrimination on the basis of [race].

*Murphy v. Yellow Freight Sys., Inc.*, 832 F. Supp. 1543, 1549 (N.D. Ga. 1993) (quoting *Bienkowski v. American Airlines*, 851 F.2d 1503, 1507-08 (11th Cir. 1988)).

Mr. DeVore was asked repeatedly during his lengthy deposition to identify specific, concrete instances showing that Deloitte & Touche treated him differently than it treated similarly-situated white employees. In virtually every response, Mr. DeVore stated that he thought he was being discriminated against because he believed that Deloitte & Touche would have acted differently had he been white. In the final analysis, Mr. DeVore equated his supervisors' criticism of the quality of his work with racism. While Mr. DeVore genuinely believes that he was victimized by racism while employed at Deloitte & Touche, more than his sincere belief is required at the summary judgment stage. His subjective interpretation of Deloitte & Touche's actions does not create an issue of fact sufficient to defeat a properly supported summary judgment motion. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997); *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 841-42, 843 (7th Cir. 1996).

Mr. DeVore also undertook to substantiate his discrimination claim using two sets of statistics. The first set of statistics compared the ratio of white and African-American employees at Deloitte & Touche's Hermitage facility with the comparable ratio for all workers in the greater Nashville metropolitan area. The second set of statistics compared the number of African-American employees transferring to the Hermitage facility who were no longer employed by Deloitte & Touche with the comparable number of transferring white employees. The trial court determined that both statistical analyses were fundamentally flawed and lacked probative value.

Consideration of statistical evidence does not differ greatly from the consideration of other types of evidence. It is relevant only when it tends to make the existence of any material fact more or less probable than it would be without the evidence. *See* Tenn. R. Evid. 401. Statistical evidence can be relevant in two ways. First, statistics, standing alone, can lead to a particular conclusion validated by human experience. Second, comparative statistics can point out discrepancies in behavior that call an actor's conduct and motives into question. *See Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987); *Brenner v. Textron Aerostructures*, 874 S.W.2d at 587.

It is now beyond question that statistical evidence may be used to prove the existence of racial discrimination. *See Teamsters v. United States*, 431 U.S. 324, 339, 97 S. Ct. 1843, 1856 (1977); *Ardrey v. UPS*, 798 F.2d 679, 684 (4th Cir. 1986); *Alabama v. United States*, 304 F.2d 583, 586 (5th Cir. 1962). Specifically, statistical evidence may be used to prove that an employer's proffered non-discriminatory reason for an adverse employment action is pretextual. *See Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994). In either instance, the statistical evidence must assist in developing a reasonable inference of discrimination in order to be admissible. *See Gillming v. Simmons Indus.*, 91 F.3d 1168, 1173 (8th Cir. 1996). It must establish a significant racial disparity and must also eliminate the most common nondiscriminatory explanations for this disparity. *See Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990); *Brenner v. Textron Aerostructures*, 874 S.W.2d at 586.

Statistical evidence may or may not be admissible under the Tennessee Rules of Evidence depending on the qualifications of the person who presents it, *see* Tenn. R. Evid. 702, and on whether the basis for the evidence is of the type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the particular subject. *See* Tenn. R. Evid. 703. In order to be admissible, the evidence must substantially assist the trier of fact, *see* Tenn. R. Evid. 702, and must not mislead the jury or cause unfair prejudice or confusion of the issues. *See* Tenn. R. Evid. 403. Expert testimony based on unreliable methodology is not substantially helpful and is, therefore, excludable. *See DeLuca v. Merrell Dow Pharm., Inc.*, 911 F.2d 941, 954 (3rd Cir. 1990); *State v. Shuck*, 953 S.W.2d 662, 668 (Tenn. 1997).

Trial courts perform a gatekeeping function to make sure that expert and scientific evidence has the level of relevancy and reliability required by Tenn. R. Evid. 401, 702, and 703. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2798 (1993); *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). Their decisions on these matters are discretionary and will not be overturned on appeal unless they have exercised their discretion in an arbitrary manner. *See State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). Questions concerning the admissibility of expert or scientific testimony or the qualifications of expert witnesses are not questions of fact. Accordingly, even at the summary judgment stage, a trial court's decisions regarding the competency of experts or the admissibility of their testimony are reviewed using the abuse-of-discretion standard. *See General Elec. Co. v. Joiner*, ___ U.S. ___, ___, 118 S. Ct. 512, 517 (1997).

We turn first to the statistical comparison between the minority representation at Deloitte & Touche's Hermitage facility and the minority population in the greater Nashville metropolitan area. The trial court found that these statistics were "not at all helpful because they are not compared to the relevant labor market, but instead to the total Nashville Metropolitan area." The trial court's decision was correct because untargeted percentage comparisons to a general population have little probative value with regard to employment discrimination claims involving employment that requires special skill qualifications. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 n.13, 97 S. Ct. 2736, 2742 n.13 (1977). In order to be admissible, these sorts of statistical comparisons must be made between populations of persons having the

same qualifications. *See EEOC v. Chicago Miniature Lamp Works*, 947 F.2d 292, 302 (7th Cir. 1991).

Mr. DeVore's expert, Dr. Kaufman, conceded that he made no effort to correlate the raw census information with the job classifications actually being used in Deloitte & Touche's Hermitage facility. He admitted that he was unaware of the job classifications being used at the Hermitage facility and that he never attempted to determine how many, if any, of the African-Americans living in the greater Nashville metropolitan area were either qualified for or interested in the work available at the Hermitage facility. Accordingly, the trial court correctly concluded that this evidence had no probative value and did not meet Tenn. R. Civ. P. 56.06's requirements.

Mr. DeVore also presented statistics through Dr. Kaufman comparing the number of white transferees still employed at the Hermitage facility with the number of remaining African-American transferees. Dr. Kaufman admitted that he had not attempted to discover the reasons why either the white or the African-American employees had left their jobs and conceded that any number of the African-American employees could have left Deloitte & Touche for reasons entirely unrelated to alleged disparate treatment based on race. He also conceded that Deloitte & Touche might have validly discharged one or more of these employees for performance-related reasons. In light of Dr. Kaufman's concessions, his statistical evidence suffers from the same defects as the statistical evidence we excluded in *Brenner v. Textron Aerostructures*, 874 S.W.2d at 587, because it failed to distinguish between employees who were terminated and those who resigned voluntarily, transferred, retired, or were promoted to other positions.

Deficiencies in plausible statistical evidence may emerge from the facts of the particular case in which they are presented. *See Watson v. Ft. Worth Bank & Trust Co.*, 487 U.S. 977, 997, 108 S. Ct. 2777, 2790 (1988). In this case, the statistical data and methodology relied on by Dr. Kaufman are so deficient that they render his statistical conclusions not only untrustworthy but also of no assistance in determining whether Deloitte & Touche's proffered reason for discharging Mr. DeVore was pretextual. Accordingly, the trial court had adequate legal grounds to exclude this evidence from its consideration of Deloitte & Touche's summary judgment motion.

-16-

After Deloitte & Touche presented competent evidence that it discharged Mr. DeVore for valid reasons not related to his race, the burden shifted back to Mr. DeVore to demonstrate that he would be able to present competent evidence that Deloitte & Touche's reasons were pretextual. The trial court determined that the evidence presented by Mr. DeVore did not meet the requirements of Tenn. R. Civ. P. 56.06 and accordingly determined that Deloitte & Touche was entitled to a summary judgment because Mr. DeVore had been unable to demonstrate that he would be able to prove an essential element of his case at trial. We agree with the trial court's decision.

## IV.

### MR. DEVORE'S RETALIATORY DISCHARGE CLAIM

In addition to suing Deloitte & Touche for racial discrimination, Mr. DeVore also claimed that his former employer discharged him in retaliation for filing his discrimination charge with the EEOC. This conduct, if proven, violates both 42 U.S.C.A. § 2000e-3(a) (West 1994) and Tenn. Code Ann. § 4-21-301(1) (1991). This claim founders on essentially the same shoals that undermined Mr. DeVore's discrimination claims.

The elements for both a federal retaliatory discharge claim and a state retaliatory discharge claim are essentially the same. In order to make out a prima facie case, an employee must prove (1) that he or she opposed the employer's unlawful employment practice, (2) that the employer subsequently subjected the employee to an adverse employment action, and (3) that a causal link exists between the employee's action and the employer's subsequent adverse employment action. *See Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987); *Newsome v. Textron Aerostructures*, 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995).[5] An employee may establish the needed causal connection simply by proving that his or her protected activity was a substantial factor leading to the discharge. *See Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990); *Polk v. Yellow Freight Sys., Inc.*, 876 F.2d 527, 531 (6th Cir. 1989).

---

[5]Rather than requiring the employee to prove that he or she opposed the employer's unlawful employment practice, the state claim required the employee to prove that he or she engaged in protected activity and that the employer was aware of this activity. *See Newsome v. Textron Aerostructures*, 924 S.W.2d at 96.

Deloitte & Touche presented competent evidence that Mr. DeVore was discharged, not in retaliation for his discrimination charge, but because of his inadequate job performance. In order to avoid summary dismissal of his retaliation claim, Mr. DeVore was required to come forward with some competent evidence that Deloitte & Touche's explanation was merely pretextual. They only evidence that Mr. DeVore offered was the fact that Deloitte & Touche discharged him two months after he filed his discrimination charge with the EEOC. This bare sequential evidence does not suffice to make out either a federal or state retaliation claim. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir. 1989); *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992). Having found no competent evidence in the record that Mr. DeVore was discharged in retaliation for filing his discrimination charge or that Deloitte & Touche's explanation of the reasons for discharging Mr. DeVore are not worthy of belief, we concur with the trial court's decision to summarily dismiss Mr. DeVore's state and federal retaliation claims.

## V.

Although the procedural requirements and standards for summary judgments are strict, *see Bain v. Wells*, 936 S.W.2d at 622, we have concluded that the trial court properly applied them in this case. Accordingly, we affirm the summary judgments dismissing Mr. DeVore's discrimination and retaliatory discharge claims against Deloitte & Touche and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Maurice DeVore and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE